# IN THE UNITED STATES COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEMA NICOLE HENSON,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| v. | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Commissioner of Social Security,**[1] | : | **No. 20-cv-03630-RAL** |
| **Defendant** | : | |

**RICHARD A. LLORET**
**U.S. Magistrate Judge**                                                    **December 10, 2021**

## MEMORANDUM OPINION

Kema Nicole Henson filed a claim for disability and supplemental security income under the Social Security Act (the "SSA" or "Act"),[2] for a period beginning January 1, 2016, due to her back and sciatic nerve conditions. Plaintiff's Brief ("Pl. Br.") (Doc. No. 17) at 1. She was 44 at the time of the application. *Id*. Her claim was denied by the administrative agency that processes Social Security disability claims in Pennsylvania. R. at 147, 151. Ms. Henson appealed to an Administrative Law Judge ("ALJ"), who denied the appeal after a hearing. R. at 9-29. At the fourth step of the required five-step evaluation process,[3] the ALJ determined Ms. Henson's residual

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g). (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

[2] 42 U.S.C. §§ 416(i) and 423(d); *see* 20 C.F.R. § 404.315(a)(1).

[3] For this analysis, the ALJ considers whether a claimant: (1) is engaged in substantial gainful employment; (2) has one or more severe impairments, which significantly limit the claimant's ability to perform basic work; (3) has impairments that meet or equal the criteria associated with impairments in the Social Security Regulations so as to mandate a disability finding; (4) has a Residual Functional Capacity ("RFC") to perform work with the claimant's limitations and can return to the claimant's

functional capacity ("RFC") allowed her to perform "sedentary" work,[4] and found that Ms. Henson could not perform any past relevant work. R. at 27-28. At the fifth step of the evaluative process, the ALJ found that Ms. Henson could still perform jobs in the national economy, which meant that Ms. Henson was not disabled under the Act. R. at 29. Ms. Henson appealed to the Appeals Council, who denied her appeal, making the ALJ's decision the Commissioner's final decision. R. at 1-6.

Ms. Henson filed an appeal in this court under 42 U.S.C. §§ 405(g) and 1383(c)(3). Pl. Br. at 2; Doc. No. 1. She consented to the jurisdiction of a Magistrate Judge under 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, and Local Rule 72.1. Doc. No. 6. Because I find that the ALJ did not commit legal error, and that her determination is supported by substantial evidence, I will affirm the ALJ's decision.

## STANDARD OF REVIEW

In reviewing an ALJ's disability determination, I must "determine whether it is supported by substantial evidence." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545 (3d Cir. 2003) (citing to *Richardson v. Perales,* 402 U.S. 389, 390 (1971)); *see also* 42 U.S.C. § 405(g). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

---

previous work with that RFC; and (5) can perform any other work existing in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). The five-step disability evaluation process is described in *Hess v. Commissioner Social Security*, 931 F.3d 198, 201-02 (3d Cir. 2019). "At step five, the ALJ examines whether the claimant 'can make an adjustment to other work[,]' considering his '[RFC,] … age, education, and work experience[.]' *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves 'one or more hypothetical questions posed by the ALJ to [a] vocational expert.' *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled." *Id*. at 202.
[4] "Sedentary" work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally[,] and other sedentary criteria are met." 20 C.F.R. § 416.967(a); *see also* 20 C.F.R. 404.1567(a).

(quoting *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938))). Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (citation omitted).

I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Nevertheless, I exercise "plenary review over questions of law." *Newell,* 347 F.3d at 545 (citation omitted). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on a harmful legal error even when I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)); *Bowen v. Commissioner of Social Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

**DISCUSSION**

Plaintiff raises a single issue, claiming that the ALJ failed to properly evaluate the opinion of the consultative examiner, Dr. Mark Zibelman, M.D. Pl. Br. at 3-14. Ms. Henson argues that if the ALJ had properly evaluated Dr. Zibelman's opinion, the ALJ would have precluded Ms. Henson from performing sedentary work, which would have resulted in a finding of "disabled." *Id.* at 13.

The ALJ found that Ms. Henson had the residual functional capacity "to perform sedentary work," except for some additional functional limitations. R. at 20. The ALJ properly referenced this RFC when questioning the vocational expert ("VE") at the hearing. R. at 104-05. The VE opined that there were jobs in the national economy that Ms. Henson could perform, given the RFC assigned by the ALJ. R. at 105. Ms. Henson's

3

argument is straightforward: she argues that the ALJ's RFC determination was wrong, because it did not properly incorporate all of the functional limitations suggested by Dr. Zibelman's opinion. Pl.Br. at 1.

An ALJ has discretion to accept or reject some or all of a consulting physician's opinion, provided the ALJ adequately explains her reasoning, the reasoning is legally sound, and the reasoning is supported by substantial evidence. *See Brown v. Astrue,* 649 F.3d 193, 194 (3d Cir. 2011) (rejecting physician's opinion that was not supported by other medical evidence); *Plummer v. Apfel,* 186 F.3d 422, 430 (3d Cir. 1999) (same); *Jones v. Sullivan,* 954 F.2d 125, 129 (3d Cir. 1991) (same); *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (ALJ erred by failing "to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination.").

Here, the ALJ spent considerable time and attention on Dr. Zibelman's opinion, accepting it in part but finding that the opinion was not supported, in its entirety, by the rest of the evidence before the ALJ. R. at 26-27. As the ALJ pointed out, Dr. Zibelman examined Ms. Henson in November of 2017, but was not a treating physician. R. at 26. Dr. Zibelman opined that Ms. Henson can lift up to 20 pounds and occasionally lift up to 50 pounds, sit for up to 6 hours in an 8-hour workday, stand and/or walk for 30 minutes at one time without interruption, stand for a total of 1 hour in an 8-hour work-day, and sit for a total of 1 hour in an 8-hour work-day. R. at 26, 432. Dr. Zibelman also opined that Ms. Henson requires a cane to ambulate, at distance, can occasionally climb stairs and ramps, kneel, or crawl, but should never climb ladders or scaffolds, stoop, or crouch, among other limitations. *Id.*

The ALJ found Dr. Zibelman's opinion "somewhat persuasive," agreeing with Dr. Zibelman's postural limitations but disagreeing with Dr. Zibelman's lifting and carrying opinion. *Id.* The ALJ determined that Ms. Henson could lift *less than* the weight Dr. Zibelman allowed in his opinion, and determined that Ms. Henson had a residual functional capacity limited to sedentary work. Sedentary work calls for "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a); *see also* 20 C.F.R. 404.1567(a). Dr. Zidelman, by contrast, opined that Ms. Henson could lift 20 pounds frequently, and up to 50 pounds occasionally, which is consistent with light work. R. at 26, 431.

The ALJ went on to find that Ms. Henson's back issues would cause "minimal" limitations, as she "started on Lyrica in December 2018, and she confirmed that the medication helped relieve her pain symptoms." R. at 26. The ALJ noted that Ms. Henson presented to a hospital with pain in both knees in November of 2016, at which point her "extremity examination was normal and she had full range of motion in her knees." *Id.* at 23. The "provider noted that the claimant did not have a condition that required surgical or medical intervention. . . She was provided with a cane." *Id.* The ALJ noted that "the claimant reported that she used the cane when she had to walk long distances." *Id.* at 26. The ALJ found that Ms. Henson did not report knee pain again until a year later, in November of 2017. During Ms. Henson's examination by Dr. Zibelman in November of 2017 "she had a negative seated leg raise bilaterally, no evidence of joint deformity, and her joints were stable." R. at 25.

The ALJ concluded that Ms. Henson's limitations resulting from her back, knee and elbow issues were fully accounted for in the RFC determination limiting her to sedentary work, with no climbing ladders, ropes, or scaffolds, and with certain other

5

tasks limited to occasional occurrences (e.g., climbing ramps or stairs, stooping, crawling, kneeling). *Id.* at 22, 25.

Ms. Henson argues that Dr. Zibelman's walking and standing limitations are inconsistent with sedentary work. Pl.Br. at 13 (citing to R. 432). That is wrong. Ms. Henson focuses on Dr. Zibelman's opinion that Ms. Henson could walk for no more than 30 minutes at a time and stand for no more than 30 minutes at a time, adds these two up, and argues that Ms. Henson could stand and walk for no more than 1 hour in an 8-hour work-day. *Id.* Since sedentary work requires the ability to stand and walk for about 2 hours in a work-day,[5] Ms. Henson argues that Dr. Zibelman's opinion rules out sedentary work. *Id.* But this is flatly contradicted by Dr. Zibelman's express opinion that Ms. Henson can stand for up to 1 hour total in an 8-hour work-day and walk for an additional hour during the work-day. R. 432. One plus one is two hours a day. Coupled with the ability to sit for 6 hours a day, *id.*, Dr. Zibelman's limitations meet the requirements for sedentary work. Ms. Henson's argument to the contrary is simply incorrect.

Ms. Henson claims that the ALJ's "analysis is puzzling, as she fails to explain how the evidence is inconsistent with Dr. Zibelman's opinion." Pl. Br. at 7. By contrast, I do not find the ALJ's analysis puzzling at all. The ALJ spent paragraphs of her opinion thoroughly considering Dr. Zibelman's opinion. R. at 17, 24, 26. Where the ALJ diverged from Dr. Zibelman's opinion, it was to limit Ms. Henson's lifting capacity to sedentary work requirements, rather than the heavier work permitted by Dr. Zibelman's lifting

---

[5] SSR 96-9p provides that "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday."

6

limitations. *Compare* R. at 26 *with* R. at 431. As for Dr. Zibelman's standing and walking limitations, they exactly match the requirements for sedentary work.

Finally, Ms. Henson seems to argue that her use of a cane or walker would preclude sedentary work. Pl. Br. at 13. There is no opinion evidence to that effect in the record. Dr. Zibelman, who examined Ms. Henson in November of 2017, listed only a "straight cane" as an "assistive device." R. at 426. He opined that Ms. Henson could walk a distance of 100' (one-hundred feet) without the aid of a cane, which matches his report's explanation that she needed a cane to walk "distance." R. at 425, 432. Taking into account Ms. Henson's limitations, Dr. Zibelman opined she could walk up to 1 hour per work-day and stand up to 1 hour per work-day. *Id*. at 432. The ALJ agreed.

There is some evidence that Ms. Henson reported using a wheeled walker for a period of time in 2018. Pl. Br. at 13 (citing R. 883, 985, 1038, 1206, 1290, 140[3],[6] 1405). The ALJ noted that there was evidence in the record that Ms. Henson used a walker in 2018, but it was unclear that the walker was prescribed. R. at 25. Dr. Zibelman did not mention a walker in his November 2017 examination report. R. 425-440. The ALJ commented that the record does not "show that the claimant used the walker for a period lasting at least 12 months." R. at 17. That is true. By December of 2018 Ms. Henson treated at Temple's Neuro Clinic for a primary diagnosis of cervical radiculopathy. R. at 1365 (cited at R. 23). Ms. Henson had started on Lyrica and reported "that the medication helped relieve her pain symptoms." R. at 23 (citing R. at 1365-66). Notably absent during the Neuro Clinic notes from December of 2018 is any mention of a walker. R. 1365-68. Reports of using a walker were at most episodic in

---

[6] The plaintiff's brief cites to R. 1404, but the reference to a walker occurs at R. 1403.

7

2018. *See* R. 858 (no walker), 867 (no walker), 874 (cane only), 983 (no walker), 979 (no walker), 1052 (no walker), 1145 (no walker), 1151 (no walker).

## CONCLUSION

I conclude that the ALJ properly considered Dr. Zibelman's report, did not err legally, and that her opinion denying disability was based on substantial evidence. Accordingly, I will affirm the ALJ's decision and dismiss Ms. Henson's appeal.

BY THE COURT:


_s/Richard A. Lloret_
**RICHARD A. LLORET**
**U.S. Magistrate Judge**